IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MONICA WILLIAMS, individually and as parent and next friend of D.W., a minor, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. CIV-23-123-PRW |
| SHAWNEE PUBLIC SCHOOLS, TYLER HARRISON, and DARRIN DEAN ) ) ) ) | |
| Defendants. ) | |

## **ORDER**

Before the Court is Defendants' Motion to Dismiss (Dkt. 6). The matter is fully briefed, and for the reasons that follow the Court **GRANTS LEAVE** for Plaintiff to move to amend her complaint within thirty days of this Order; and **CONDITIONALLY DENIES** the Motion (Dkt. 6).

### *Background*

On September 14, 2020, minor student D.W. sustained an injury to his right knee while playing for the Shawnee High School football team. The injury required surgery and months of physical therapy. On September 13, 2021, D.W. had completed physical therapy, but was not medically cleared to resume playing football. In addition, Plaintiff had not signed a form granting parental consent for D.W. to play. Nevertheless, Defendants Tyler Harrison and Darrin Dean, Shawnee High School football coaches, put D.W. in to play in

1

a junior varsity game in violation of school policies. In the course of that game, D.W.'s right knee was re-injured, resulting in another surgery.

Plaintiff brought this action in the District Court of Pottawatomie County, Oklahoma, against Defendants Harrison and Dean, as well as Defendant Shawnee Public Schools (the "District"). The Complaint (Dkt. 1-1)[1] lists three causes of action: (1) negligence; (2) deprivation of constitutional rights in violation of 42 U.S.C. § 1983; and (3) violation of rights under the Oklahoma Constitution. Defendants removed to this Court on the ground of federal question jurisdiction over the § 1983 claim,[2] and supplementary jurisdiction over the state law claims.[3] Defendants then filed the present Motion to Dismiss (Dkt. 6).

## *Legal Standard*

In reviewing a Fed. R. Civ. P. 12(b) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[4] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[5] While factual allegations are taken as true, a court need not accept mere legal

---

[1] The Court refers to "the complaint" for convenience, though the pleading before the state court was styled as a petition.

[2] 28 U.S.C. § 1331.

[3] 28 U.S.C. § 1367.

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[5] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

conclusions.[6] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough.[7]

Plaintiff's Response (Dkt. 7) attaches evidence not part of the Complaint (Dkt. 1-1). Consideration of materials outside of the pleadings sometimes requires converting a motion to dismiss to a motion for summary judgment.[8] But "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[9] The evidence—plans and policies governing school sports promulgated by Shawnee Public Schools and the Oklahoma Secondary Schools Activities Association—are referenced in the Complaint (Dkt. 1-1) and central to at least Plaintiff's negligence claim. Neither party has disputed the authenticity of these documents. The Court considers these documents, to the extent they are relevant, without converting Defendant's Motion (Dkt. 6) into a motion for summary judgment.

### *Analysis*

Section 1983 provides that any person acting under color of law who deprives a United States citizen of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."[10] Local government

---

[6] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[7] *Id.*

[8] Fed. R. Civ. P. 12(d).

[9] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005).

[10] 42 U.S.C. § 1983.

entities such as Defendant District are "persons" subject to suit under § 1983.[11] To hold an entity or person accountable, a plaintiff generally must show that the alleged violative actions were "representative of an official policy or custom" or "taken by an official with final policy-making authority."[12] Liability may also attach in circumstances where "a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence."[13] To state a prima facie case for "danger creation" in violation of substantive due process rights, a plaintiff must show that:

> "(1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendant acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience."[14]

Plaintiff's Complaint (Dkt. 1-1) alleges that Defendants deprived D.W. of "his right to a safe school environment and right to an education free from physical harm," as well as a general "deprivation of constitutional rights under the 14th Amendment."[15] Defendants' Motion (Dkt. 6) addresses several possible § 1983 theories that could be

---

[11] *Sauers v. Salt Lake County*, 1 F.3d 1122, 1129 (10th Cir. 1993) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

[12] *Rost ex rel. K.C. v. Steamboat Springs RE-2 School Dist.*, 511 F.3d 1114, 1124–25 (10th Cir. 2008).

[13] *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)); *see Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 916–22 (10th Cir. 2012). This is a limited doctrine, in light of the concern that § 1983 is not meant to replace ordinary state tort law. *Gray*, 672 F.3d at 913.

[14] *Robbins*, 519 F.3d at 1251.

[15] Pl.'s Compl. (Dkt. 1-1), ¶¶ 18–22.

supported by these allegations. In her Response (Dkt. 7), Plaintiff relies almost exclusively on a danger creation theory.

Defendants raise two primary challenges to Plaintiff's danger creation claim. First, they say that Plaintiff has failed to allege any affirmative action on Defendants' part, a necessary precondition for the theory to apply at all.[16] In Defendants' framing, Defendants Harrison and Dean's disregard of Defendant District's policies in deciding to play D.W. in the football game was merely negligent. Second, Defendants argue that the alleged conduct falls short of shocking the conscience. Surveying other cases involving athlete injuries, Defendants conclude that playing a medically ineligible student in a football game is not so "egregious, outrageous or fraught with unreasonable risk"[17] as to clear the high bar of conscience shocking.

Plaintiff views things differently. From her perspective, Defendants made the decision to play D.W. in the game, with full knowledge that he was not eligible under the applicable policies. That decision, she says, was an affirmative action sufficient to bring the danger creation doctrine into play. As for shocking the conscience, Plaintiff simply restates some of her factual allegations and concludes that the element is satisfied. Plaintiff cites no case law to support her contention, nor does she attempt to distinguish or contextualize the precedents cited by Defendants.

---

[16] *See Gray*, 672 F.3d at 920 n.8.

[17] *Ruiz v. McDonnell*, 299 F.3d 1173, 1184 (10th Cir. 2002) (quoting *Liebson v. New Mexico Corr. Dept.*, 73 F.3d 274, 277 (10th Cir. 2002)).

Accepting the alleged facts as true, and taking all reasonable inferences in favor of Plaintiff, the Court finds that, for Defendants Harrison and Dean, Plaintiff has pleaded an affirmative action leading to private violence, satisfying the preconditions to consider the danger creation elements. The Court acknowledges the line of cases cited by Defendants that hold that a failure to act or mere negligence is not enough.[18] But here, Plaintiff does not merely allege that Defendants Harrison and Dean made the decision to play D.W. while negligently failing to check his eligibility. Rather, she alleges that they made that decision *with full knowledge* that he was ineligible under the school policies.[19] At this early stage, that alleged reckless disregard is enough. As for Defendant District, the Court finds no allegation of affirmative conduct that could open the door for danger creation liability.[20]

Turning then to the danger creation elements, the Court finds that the conduct alleged, viewed as a whole, does not shock the conscience.[21] The Tenth Circuit, and other

---

[18] *See, e.g.*, *Robbins*, 519 F.3d at 1251; *Graham v. Ind. Sch. Dist. No. I-89*, 22 F.3d 991, 994–95 (10th Cir. 1994); *Mathis v. Wayne County Bd. of Educ.*, 782 F. Supp. 2d 542, 551–52 (M.D. Tenn. 2011).

[19] Pl.'s Compl. (Dkt. 1-1), ¶¶ 16, 21.

[20] This analysis is somewhat muddled by the Complaint's tendency for group pleading, i.e. allegations against "Defendants" collectively rather than attributing specific actions to specific defendants. Nevertheless, nothing in the Complaint hints at Defendant District being involved in the decision to play D.W. in the football game, which is the only alleged conduct that could be said to "impose[] an immediate threat of harm, which by its nature has a limited range and duration." *Gray*, 672 F.3d at 920–21 (quoting *Ruiz*, 299 F.3d at 1183). Plaintiff's allegations against Defendant District are largely for negligently hiring, training, or supervising Defendants Harrison and Dean. Pl.'s Compl. (Dkt. 1-1), ¶ 12. To the extent that conduct involved affirmative actions, they were far too remote from the alleged harms.

[21] Defendants largely confine their arguments to the sixth element. This is not unusual given the high bar for conduct to be conscience-shocking. *See Ruiz*, 299 F.3d at 1183

courts to apply the standard, have made clear that shocking the conscience of a federal judge is no mean feat. Indeed, it applies only in "exceptional circumstances."[22] "[A] plaintiff 'must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.'"[23] Conduct must be "egregious, outrageous[,] or fraught with unreasonable risk,"[24] something "more than an ordinary tort."[25]

The alleged conduct of Defendants Harrison and Dean simply does not rise to a level of outrageousness that shocks the conscience. D.W. was a former student athlete who had recently completed physical therapy for his prior injury. Even accepting as true that D.W. had not been attending practice, and that Harrison and Dean knew that he was not medically cleared to play and that Plaintiff had not consented to him participating, their decision to put him into the game was not so egregious as to violate the Constitution. Especially in the area of school sports, where there exists an accepted baseline risk of injury, conduct must be truly heinous, greatly increasing the magnitude of potential harm, before it will shock the conscience.[26]

---

(describing the "shocks the conscience" element as "the ultimate standard for evaluating a substantive due process claim"); *Uhlrig v. Harder*, 64 F.3d 567, 573–74 (10th Cir. 1995).

[22] *Ruiz*, 299 F.3d at 1184 (quoting *Eckert v. Town of Silverthorne*, 25 F. App'x 679, 689 (10th Cir. 2001) (unpublished)).

[23] *Id.* (quoting *Uhlrig*, 64 F.3d at 574).

[24] *Id.* (quoting *Liebson*, 73 F.3d at 277).

[25] *Uhlrig*, 64 F.3d at 574.

[26] Harsh training regimens resulting in injury or death do not generally shock the conscience. *See, e.g.*, *Davis v. Carter*, 555 F.3d 979, 982–84 (11th Cir. 2009); *Dorley v. S. Fayette Tp. School Dist.*, 129 F. Supp. 3d 220, 227–29 (W.D. Penn. 2015). Letting a student

Plaintiff has failed to plausibly allege a § 1983 claim on a state-created danger basis. She has alleged no affirmative action proximately resulting in injury on the part of Defendant District, and the conduct alleged on the part of Defendants Harrison and Dean does not rise to the level of shocking the conscience. For the first time in her Response (Dkt. 7), Plaintiff argues that she herself suffered due process injuries, in that she was deprived of her constitutional right as a parent to direct the care, upbringing, and education of her child.[27] This argument is wholly divorced from the Complaint (Dkt. 1-1), which alleges constitutional injuries only on the part of D.W.[28]

Plaintiff asks that she be given leave to amend her Complaint (Dkt. 1-1), should the Court find that she failed to set forth a claim under § 1983.[29] Although the Court has its

---

athlete continue to play after suffering a possible injury also does not generally shock the conscience. *See, e.g.*, *M.U. v. Downingtown High Sch. E.*, No. 14-04877, 2015 WL 4941816, at *2–3 (E.D. Pa. Aug. 19, 2015). One of the few cases to meet the "shocks the conscience" standard in the area of school sport injuries was *Alt v. Shirey*, No. 11-0468, 2012 WL 726579 (W.D. Pa. Feb. 7, 2012) *adopted by Alt v. Shirey*, No. 11-468, 2012 WL 726593, at *2 (W.D. Pa. Mar. 1, 2012). There, the student athlete suffered several blows to the head, and exhibited clear symptoms of a concussion or other brain injury. *Id.* at *2. Coaches observed those symptoms, but nevertheless instructed the student to not only return to the game, but to deliver another hard hit to an opposing player. *Id.* At the motion to dismiss stage, that deliberate indifference was enough to shock the conscience. *Id.* at 12.

[27] Pl.'s Resp. (Dkt. 7), at 21.

[28] Pl.'s Compl. (Dkt. 1-1), ¶¶ 18–22.

[29] Pl.'s Resp. (Dkt. 7), at 21–22.

doubts,[30] it cannot say for certain that any such amendment would be futile.[31] Accordingly, the Court **GRANTS LEAVE** to amend and **CONDITIONALLY DENIES** the Motion (Dkt. 6). Plaintiff may file a separate motion to amend, attaching a proposed amended complaint in accordance with LCvR15.1, within thirty days of this Order. If the proposed amendment would be futile, or if Plaintiff fails to so move, the Court will dismiss Plaintiff's § 1983 claims and remand the remaining state law claims to the District Court of Pottawatomie County.[32]

### *Conclusion*

For the reasons explained above, the Court **GRANTS LEAVE** for Plaintiff to move to amend her complaint within thirty days of this Order; and **CONDITIONALLY DENIES** the Motion to Dismiss (Dkt. 6).

**IT IS SO ORDERED** this 25th day of March 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[30] In particular, the Court does not at this point assess Defendants' qualified immunity arguments. *See Pearson v. Callahan*, 555 U.S. 223, 236–39 (2009) (analyzing the alleged constitutional violation before qualified immunity is appropriate in many circumstances, though not mandatory); *Currier*, 242 F.3d at 917; *Ruiz*, 299 F.3d at 1185–86.

[31] *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("[T]he district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint.").

[32] *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); 28 U.S.C. § 1367(c)(3).